## Clarke & Thaw *versus* Needles.

If goods are received by common carriers, with orders to "ship immediately," and are stored in their warehouse, the navigation being obstructed, and there consumed by fire, they are liable for the value to the owner as common carriers.

If a common carrier receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessary to the carriage, and for the purpose of facilitating it, his liability as a common carrier begins with the receipt of the goods.

ERROR to the District Court of *Allegheny county*.

The action was case by Needles against Clark & Thaw.

The plaintiff, on the 21st June, 1853, caused twenty-five sacks of wool to be delivered to the defendants, at their warehouse in the city of Pittsburgh, (they being warehousemen and common carriers,) to be transported to Philadelphia, with instructions to ship the same immediately to the consignee. Two or three days before the delivery of the wool, the water had been drawn out of the canal, between Freeport and Leechburgh, for the purpose of repairing the Freeport aqueduct, and was not let in again until Saturday, the 25th of June.

In the mean time the navigation of the canal between Pittsburgh and Leechburgh was suspended; but one or more boats cleared daily (excepting on the 24th), at the collector's office in Allegheny, for Johnstown or Columbia, as shown by the clearance register. None of these boats, however, passed through the Freeport aqueduct until the 25th of June. One boat, belonging to the defendants, cleared on the 25th, laden with flour and second class goods for Philadelphia.

The plaintiff's wool was, on its delivery, stored in the defendants' warehouse, at the Canal Basin, where it remained until the night of the 26th of June, when it was destroyed by the accidental burning of the warehouse.

The declaration charged the defendants: 1. As common carriers; 2. Upon a breach of the contract to "ship immediately;" 3. For general negligence.

The jury found for the plaintiff $2190.68, subject to the opinion of the Court on the point reserved, "Whether the plaintiff, on the agreed facts, and all the evidence, is entitled to recover."

The Court (WILLIAMS, J.) afterwards entered judgment on the verdict for the plaintiff; to reverse which, and have judgment entered for defendants, *non obstante veredicto*, this writ of error was sued out by defendants below.

*Stanton*, for plaintiffs in error.—I. Where the same party acts in the capacity of warehouseman and common carrier, the liability

[Clarke *v.* Needles.]

depends on the relation held at the time of loss: *Story on Bail.* § 445; *Gray's Mass. Rep.* 263; *Am. L. Reg.*, Nov. 1854, 59.

II. The instruction to "ship immediately" could only create the relation of forwarding merchants, which is the same as *warehousemen: Story on Bail.* §§ 444, 449; 10 *Watts* 335.

III. The Court below predicate their opinion upon the principle that, being delivered to the defendants to be forwarded, they *ipso facto* became liable as common carriers. This is erroneous. The receipt of defendants showed that they held the wool, subject to the instructions of plaintiff. That receiving the goods to "be forwarded" created the relation of common carrier, is a *non sequitur*, and contrary to the well established rules of law.

*McCandless* and *Bailey*, for defendant in error.—Were the defendants warehousemen or common carriers? When the object is carriage, the contract must be considered to be made in view of that object; the corresponding liability follows: *Ang. on Car.* §§ 129, 304, 131; *Story on Bail.* § 536; 5 *T. R.* 392; 1 *T. R.* 27.

They were liable on the express engagement to "ship immediately." Was it received to await the orders of the owner, or to ship? If the latter, defendants are liable as carriers: 4 *Wh.* 214.

They are liable for negligence in receiving the goods, when they knew they could not "ship immediately:" *Ang. on Car.* § 163.

The opinion of the Court was delivered by

LEWIS, C. J.—It is admitted that the defendants below were warehousemen and common carriers at the time the goods were delivered to them, with directions to ship them immediately to Still, Martin & Co., Philadelphia. If they had also occupied the character of *forwarders*, the directions to "ship immediately" might have applied to their duties in the latter capacity. But they were not forwarders. If the case contained any fact from which it might be inferred that the goods were delivered to be placed in the defendants' warehouse, to await the orders of the owners, or for any purpose of convenience to him, the ordinary liabilities of warehousemen would be all that could attach to them. But there was no direction to store the goods; no delivery to them for that purpose; no necessity or convenience of the owner requiring the goods to be stored. They were not delivered to be detained to await the orders of the owner. The goods, and the order to ship them immediately, were delivered together. The only inference to be drawn from the facts of the cause is, that they were delivered to the defendants as common carriers, and that the storing of them in their warehouse was an act of their own, for their own convenience, and was incident to their business as carriers. Judge Story, in his work on Bailments, § 536, states the law on this subject with precision. "If a common carrier

[Clarke *v.* Needles.]

receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage, and for the purpose of facilitating it, his liability as a carrier begins with the receipt of the goods;" "so if an innkeeper is at the same time a carrier, and goods are sent to his inn, and received by him for transportation, he is liable as a carrier for any loss before they are put upon their transit." " On the other hand, if a person is at the same time a common carrier and a forwarding merchant, and he receives goods into his warehouse, to be forwarded according to the future orders of the owner; if the goods are lost by fire before such future orders are received, or the goods are put in transit, he is not chargeable as a common carrier, but only as a warehouseman:" *Story on Bailments,* § 537. The case of Platt *et al. v.* Hibbard & Webb, 7 *Cowen* 497, was the case of delivery to a warehouseman, to remain there for the purpose of being forwarded, subject to the owner's order. It was there held that the bailee was answerable only to the extent of a warehouseman's liability. The case of Forward *v.* Pittard, 1 *T. R.* 27, was one in which the carrier was held to be liable for goods destroyed in his *booth* before they were put on their transit. It may be of some advantage to a carrier to have a warehouse, instead of a booth, in which to secure the goods until he is ready to put them on their way to their place of destination. But it is no concern of the owner of the goods. It works no change in the carrier's liability for goods delivered to him for transportation. That the goods were delivered in this case for that purpose is too clear for further argument. The defendants below were therefore liable as carriers, and the judgment should be affirmed.

Judgment affirmed.