W. C. Spofford and Ella Spofford, his wife, Appellants, *v.* The Pennsylvania Railroad Company, a corporation.

*Common carrier—Liability—Essentials of delivery.*

It is essential to the establishment of liability as a common carrier for the loss of goods to show delivery to the carrier at a customary place, during the usual business hours and to an authorized agent.

*Warehouseman's liability—Affirmative proof of negligence.*

A delivery to a railroad warehouse about dark and after it was closed and locked for the night, by plaintiff's agent by opening the upper door and thereby putting the goods in, there being no one in charge, does not show such delivery as will charge defendants as a common carrier nor as a warehouseman without affirmative proof of some act of negligence on the part of defendant.

Argued April 20, 1899. Appeal, No. 204, April T., 1899, by plaintiffs, from judgment of C. P. Westmoreland Co., Feb. T., 1896, No. 59, on nonsuit. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Motion to take off nonsuit. Before the court in banc.

It appears from the evidence that plaintiffs delivered at defendant's freight depot a box containing household goods to the value of $303.75. The drayman delivered the box at the freight depot after business hours, no one was there to receive it and

he opened an upper door and pushed it in.   On his way home he told the shipping clerk that he had so placed the box in the freight depot.   The property never reached the consignees and this action was brought to recover its value.

The court entered a compulsory nonsuit which it subsequently on motion refused to take off.   Plaintiffs appealed.

*Error assigned* was refusing to take off the nonsuit.

*John F. Wentling,* with him *David A. Miller,* for appellants.— After the evidence the conclusion is irresistible that this was a question for the determination of the jury.   There was more than a scintilla of evidence in support of the plaintiff's case and it was error therefore not to submit it to the jury : Patterson v. Dushane, 115 Pa. 334.

*Cyrus E. Woods,* with him *Paul H. Gaither,* for appellees.— There was no delivery by the plaintiff, or his agent, to the defendant, or its agent, of the goods in suit.

An offer to deliver after business hours and after the consignee has dismissed his servants is not made at a proper time : Merriam v. Railroad Co., 20 Conn. 354; Railway Co. v. McFadden, 154 U. S. 160.

OPINION BY WILLIAM W. PORTER, J., July 28, 1899 :

This action is brought to hold the defendant company liable as a common carrier.   The first essential to the establishment of such a liability for the loss of goods is proof of their delivery to the carrier, at a customary place, during the usual business hours, to an authorized agent.   In this case the plaintiff has failed to prove a compliance with at least two of these requisites of a good delivery.   It is possible that the goods, claimed to have been lost, were deposited at the customary place, in the defendant's warehouse.   It is manifest from the evidence that they were not placed there during the usual business hours, and that no authorized agent was present to receive them.   The plaintiff's witness says in effect that about 7 o'clock in the evening, just about dark, when the defendant's warehouse was closed and locked for the night, that he opened the upper door and put the goods in, there being no one on the grounds in charge of the warehouse and no one there representing the company to receive the goods.

This attempted delivery was sought to be helped out by proof that the drayman called to the bill clerk of the railroad (whose residence was about 100 feet distant) that he had left some goods of Spofford and that he wanted the clerk to bill and ship them early the next morning. This was addressed to the bill clerk, not the shipping clerk nor the freight agent. Furthermore the drayman knew that the bill clerk was not in fact that day on duty. This was not a delivery to an authorized agent, especially in view of the testimony of the drayman who says: " I drew his attention to the box to be shipped. Of course it was too late in the evening to be received that evening when I took it there."

" The whole transaction plainly shows that the carrier's duty had not fairly begun and consequently that the contract for carriage was not fully consummated:" Stewart v. Bremer, 63 Pa. 268.

It is suggested however that the deposit of the goods in the warehouse charged the defendant company as warehousemen. " If the case contained any fact from which it might be inferred that the goods were delivered to be placed in the defendant's warehouse to await the orders of the owner or for any purpose of convenience to him, the ordinary liabilities of warehousemen would be all that could attach to them:" Clarke v. Needles, 25 Pa. 338. The only possible purpose of the alleged delivery shown by the testimony was that the goods should remain in the warehouse until arrangement was made to ship them the next morning. Assuming then, that the obligation of the defendant company was that of warehousemen, it was incumbent upon the plaintiff affirmatively to prove some act of negligence on the part of the defendant company under the terms of such a bailment. In this he has failed.

It is attempted to be urged by the appellant that the method of delivery here adopted was customary. The evidence does not sustain this contention. When asked whether he had gone into the warehouse in a similar way before, the drayman first said that he had, but he subsequently said: " I don't remember whether ever I had occasion to go in that way before."

We are therefore of opinion that no error was committed in refusing to take off the nonsuit, and the judgment is affirmed.